# EXHIBIT A

ELECTRONICALLY FILED - 2022 Dec 27 10:02 PM - ABBEVILLE - COMMON PLEAS - CASE#2022CP0100369

| STATE OF SOUTH CAROLINA<br>COUNTY OF ABBEVILLE | IN THE COURT OF COMMON PLEAS<br>FOR THE EIGHTH JUDICIAL CIRCUIT |
|---|---|
| Dr. Christie Rogers-Larke,<br><br>      Plaintiff,<br><br>v.<br><br>Erskine College,<br><br>      Defendant. | **SUMMONS** |

**TO THE DEFENDANT ABOVE-NAMED:**

YOU ARE HEREBY SUMMONED and required to answer the Complaint, a copy of which is served upon you, and to serve a copy of our to this Complaint upon the subscriber at the address shown below within thirty (30) days (thirty five (35) days if served by United States Mail) after serve hereof, exclusive of the date of such service, and if you fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

            s/ Samantha Albrecht
            Samantha Albrecht (Bar ID 102642)
            BURNETTE SHUTT & MCDANIEL, PA
            912 Lady Street, 2nd Floor (29201)
            Post Office Box 1929
            Columbia, South Carolina 29202
            T: 803.904.7933
            F: 803.904.7910
            salbrecht@burnetteshutt.law

            **ATTORNEY FOR PLAINTIFF**

December 27, 2022
Columbia, South Carolina

1

ELECTRONICALLY FILED - 2022 Dec 27 10:02 PM - ABBEVILLE - COMMON PLEAS - CASE#2022CP0100369

| | |
|---|---|
| **STATE OF SOUTH CAROLINA**<br>**COUNTY OF ABBEVILLE** | **IN THE COURT OF COMMON PLEAS**<br>**FOR THE EIGHTH JUDICIAL CIRCUIT** |
| Dr. Christie Rogers-Larke,<br><br>                    Plaintiff,<br><br>v.<br><br>Erskine College,<br><br>                    Defendant. | **COMPLAINT**<br>**(Jury Trial Demanded)** |

Plaintiff complaining of the defendant respectfully alleges as follows:

### PARTIES AND JURISDICTION

1.     Plaintiff, Dr. Christie Rogers-Larke, is a citizen and resident of Spartanburg County, South Carolina.

2.     Defendant, Erskine College, is a private university located in Abbeville County, South Carolina.

3.     This action arises under Title VII of the Civil Rights Act of 1964, and the Common Law of South Carolina.

4.     Plaintiff appropriately and timely filed charges with the Equal Employment Opportunity Commission, received her Notice of Right to Sue, and this action is timely.

5.     Jurisdiction and venue are proper, because the parties have sufficient connections to this circuit, and the events giving rise to this action occurred in Abbeville County, South Carolina.

2

ELECTRONICALLY FILED - 2022 Dec 27 10:02 PM - ABBEVILLE - COMMON PLEAS - CASE#2022CP0100369

## FACTUAL ALLEGATIONS

6.     Since 2003 Plaintiff has worked in the collegiate setting in addition to her work with her private practice and non-profit.

7.     Plaintiff owns and is the clinical director of Outside of the Box Therapy in Gaffney, South Carolina. Plaintiff also owns Auxilium, a non-profit started to stand in the gap of mental health services for those who would not otherwise have access.

8.     Plaintiff is a Professor of Graduate Counseling at Liberty University which allowed her to meet the credentials for the Council for the Accreditation of Counseling and Related Educational Programs (CACREP).

9.     Plaintiff has taught psychology and counseling courses for a number of other colleges including Spartanburg Community College, Capella University, Walden University, and others.

10.     Plaintiff has had a successful career in both the private counseling field as well as in the academic field.

11.     In early 2019, Defendant was working to establish a license eligible program that met the CACREP standards.

12.     CACREP was created by the American Counseling Association (ACA). CACREP is charged with setting and monitoring precise standards for promoting uniformity across counselor training programs in the United States. CACREP is now an independent agency and is the only professional body recognized by the Council for Higher Education Accreditation to accredit master's programs in school counseling; clinical mental health counseling; and marriage, couple, and family counseling, as well as doctoral programs in counselor education and supervision.

3

13. CACREP pedagogical standards are at the core of the National Counselor Examination for Licensure and Certification, a tool that provides a standardized measure of comparison across the United States.

14. CACREP Standards require counselor educators within accredited programs to evaluate counselors-in-training in a manner that is consistent with the ACA Code of Ethics.

15. The ACA code of ethics includes the following:

   a. The central tenant of the ACA code of ethics is "to respect the dignity and promote the welfare of clients." (Standard A.1.a)

   b. "Counselors act to avoid harming their clients [and] trainees." (Standard A.4.a).

   c. "Counselors are aware of—and avoid imposing—their own values, attitudes, beliefs, and behaviors … especially when the counselor's values are inconsistent with the client's goals or are discriminatory in nature." (Standard A.4.b).

   d. "Counselors do not condone or engage in discrimination against prospective or current clients, students, employees, supervisees, or research participants based on age, culture, disability, ethnicity, race, religion/spirituality, gender, gender identity, sexual orientation, marital/ partnership status, language preference, socioeconomic status, immigration status, or any basis proscribed by law." (Standard C.5)

16. No provisions exist for counselor educators or counselors-in-training to claim exemption from nondiscrimination or diversity mandates.

17. One's values and beliefs, whether they are religious, political, or personal, do not grant counselors, counselor educators, or counselors-in-training license to practice outside of the ACA Code of Ethics nondiscriminatory and diversity requirements.

18. The vision of CACREP is to provide leadership and to promote excellence in professional preparation through the accreditation of counseling and related educational programs. As an accrediting body, CACREP is committed to the development of standards and procedures that reflect the needs of a dynamic, diverse, and complex society.

19. Also in early 2019, Plaintiff applied for an adjunct position with Defendant.

20. In March 2019, Dr. Elsner, Defendant's Director of the Master of Arts Christian Counseling (MACC) program, contacted Plaintiff about a full-time position with Defendant rather than the adjunct position she had applied for.

21. In March 2019, Dr. Elsner reached out to Plaintiff about an opportunity to teach a sample lesson and meet Defendant's faculty.

22. In Summer 2019, Defendant offered Plaintiff an opportunity to serve as an independent contractor to start the foundational work for the CACREP program which was due to start in Fall 2019.

23. In August 2019, Plaintiff was hired as a Research Professor of Christian Counseling for Defendant. Plaintiff worked to help develop the MACC program at Defendant.

24. Defendant advertises the MACC degree. With respect to this degree, Defendant states:

5

ELECTRONICALLY FILED - 2022 Dec 27 10:02 PM - ABBEVILLE - COMMON PLEAS - CASE#2022CP0100369

    a. The MACC is a professional degree that prepares students to be effective, licensed counselors with a strong Christian worldview, eligible to work in any public or private institution providing psychological care.

    b. Based on CACREP standards, the MACC requires a minimum 100 hours of practicum, with a minimum of 40 hours of direct service with clients during the first year of the program. During the second year of the program, students will complete a minimum of 600 hours of fieldwork with a minimum of 240 hours of direct service with clients. These hours will be accrued outside of class times and only enrolled students can sign up for counseling slots in the Erskine-affiliated counseling centers, through the program director.

    c. The Practicum and Fieldwork requirements are designed to meet the requirements for the South Carolina State Board of Professional Counseling.

    d. A supervisor must have a minimum of a master's degree and be licensed as a Professional Counselor, Clinical Social Worker, Licensed Marriage and Family Therapist, or Psychologist; or have earned a doctorate in Counselor Education & Supervision from an accredited university.

25. CACREP Standards require counselor educators within accredited programs to evaluate counselors-in-training in a manner that is consistent with the ACA Code of Ethics.

26. In Spring 2021, Dr. Elsner announced his departure from Defendant, and Plaintiff was asked to move into the Interim Director position. Plaintiff accepted and filled

ELECTRONICALLY FILED - 2022 Dec 27 10:02 PM - ABBEVILLE - COMMON PLEAS - CASE#2022CP0100369

the role of Interim Director of the MACC program while continuing to perform all her duties as a professor.

27. During the Summer of 2021, Robert Gustafson, the President of Erskine College, Michael Milton the Provost of Erskine Theological Seminary, and R.J. Gore the Dean of Erskine Theological Seminary retired.

28. In July 2021, Defendant appointed Dr. Tom Hellams as the Interim President and Dr. Seth Nelson as the Dean of the Seminary.

29. Prior to retiring, Dr. Gore completed Plaintiff's employment review for her first year of employment. Plaintiff's evaluation was positive, and she received above satisfactory ratings in all categories.

30. Also in July 2021, Dr. Nelson told Plaintiff that she had not be brought before the Seminary Board as a part of her hiring, and she would need to do so now.

31. Other faculty members of Defendant, who were not Native American, and who were not teaching seminary courses, were not required to go before the Seminary Board as a part of the hiring process.

32. Additionally, at this time, Plaintiff had been a faculty member of Defendant for a full year. Other faculty members of Defendant, who were not Native American, were not required to complete additional steps of the alleged hiring process almost a year after being hired by the College.

33. Despite this, Plaintiff complied and appeared before the seminary board in August 2021. The seminary board was comprised of all white, non-Native, ministers. As a part of the interview, the board questioned Plaintiff about how she would respond to a counseling patient who wanted to change genders. Plaintiff responded based

requirements that are governed by CACREP standards. During this interview, Plaintiff was asked why she would not tell the individuals that a sin is a sin and lead the person away from changing genders.

34. After her interview, Plaintiff had a discussion with Dale Johnson, another faculty member. Plaintiff expressed that many times she views the world through her "native lens" based on her background and in response Plaintiff was told that was "part of the problem."

35. In September 2021, Dr. Nelson told Plaintiff she had not pass her interview with the seminary board and her contract would not be renewed for the following academic year. Despite this, Dr. Nelson requested that Plaintiff continue teaching through the rest of the academic year and continue to allow students of Defendant to complete their practicums and internship placements through Plaintiff's private counseling office.

36. Also in September 2021, Plaintiff had gotten several students admission to the American Association for Christian Counselor's Conference by helping them get registered as volunteers.

37. After returning from the conference, Plaintiff met with Dr. Nelson and Dr. Hellams to discuss her future teaching with Defendant and try to come to an agreement that would allow Plaintiff to teach in a way that abided by the CACREP standards while also recognizing the religious beliefs of the college. During that meeting, Plaintiff was told Defendant wanted to hire someone more Presbyterian and theological, and listed a potential candidate who was non-Native, white, and less qualified than Plaintiff.

38. Ultimately, Plaintiff was replaced with a non-native, white individual who does not meet CACREP standards.

## FOR A FIRST CAUSE OF ACTION
### (Race Discrimination)

39. Plaintiff realleges the foregoing where consistent.

40. Plaintiff is a Native American from the Chippewa tribe.

41. Plaintiff has been subjected to disparate treatment on the basis of her race through treatment after the leadership changes that occurred during the summer of 2022. Plaintiff was subject to pretextual re-interviews and discriminatory working conditions which continued until Plaintiff was ultimately discharged on pretextual grounds.

42. Plaintiff has additionally suffered from a hostile work environment on the basis of her race. Plaintiff has been subjected to complaints from Defendant employees concerning her "native view" and has had her religious beliefs questioned on the basis of her status as a Native American.

43. Defendant's actions have adversely affected Plaintiff's terms and conditions of employment and deprived Plaintiff of her statutory right to a workplace free of race discrimination.

44. Plaintiff's race, Native American, was the direct and proximate cause of the adverse employment actions taken by Defendant's agents and employees, acting within the course and scope of their duties, which violated Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991, for which Defendant is liable.

45. The above amounts to unlawful discrimination prohibited by Title VII of the Civil Rights Act of 1964, The Civil Rights Act of 1991 and amendments thereto and is the proximate cause of the Plaintiff's loss of earnings, loss of prospective earnings and benefits, embarrassment, humiliation and mental anguish, personal injury, and mental

suffering for which the Plaintiff is entitled to the awards of actual damages as well as reasonable attorney's fees and costs of this proceeding and pre-judgement interests.

46. Further, Defendant's conduct was willful and wanton, and Plaintiff is entitled to punitive damages for the same.

## **FOR A SECOND CAUSE OF ACTION**
### **(Public Policy Discharge)**

47. Plaintiff realleges the foregoing where consistent.

48. This claim in pled in the alternative to Plaintiff's First Cause of Action for National Origin Discrimination.

49. Defendant's termination of Plaintiff violated clear mandates of South Carolina Public Policy.

50. Such mandates include:

   a. S.C. Code Ann. § 40-75-30: "It is unlawful for a person to practice as a professional counselor, a marriage and family therapist, or an addiction counselor in this State without being licensed in accordance with this article. A professional counselor associate may practice only under the direct supervision of a licensed professional counselor supervisor. A marriage and family therapy associate may practice only under the direct supervision of a licensed marriage and family therapist supervisor, as approved by the board. An addiction counselor associate only may work under a licensed addiction counselor supervisor or other approved board-licensed clinician as provided in regulation."

51. South Carolina regulations outline a code of ethics which includes the following:

ELECTRONICALLY FILED - 2022 Dec 27 10:02 PM - ABBEVILLE - COMMON PLEAS - CASE#2022CP0100369

ELECTRONICALLY FILED - 2022 Dec 27 10:02 PM - ABBEVILLE - COMMON PLEAS - CASE#2022CP0100369

a. SC Code Reg 36-22(A)(12): "Professional Counselors shall guard the individual rights and personal dignity of their clients in the counseling relationship through an awareness of the impact of stereotyping and unwarranted discrimination."

b. S.C. Code Regs. 36-23(C)(2): Addiction Counselors shall provide services that are nondiscriminatory and nonjudgmental. Providers shall not exploit others in their professional relationships. Providers shall maintain appropriate professional and personal boundaries.

c. S.C. Code Regs. 36-24(A)(1): Marriage and Family Therapists shall not discriminate against or refuse professional service to anyone on the basis of race, gender, religion, national origin, or sexual orientation.

d. S.C. Code Regs. 36-25(B)(2): Psycho-educational Specialists shall respect all persons and must be sensitive to physical, mental, emotional, political, economic, social, cultural, ethnic, and racial characteristics, gender and sexual orientation, and religion.

e. S.C. Code Regs. 36-25(F)(1): Psycho-educational Specialists shall not engage in or condone practices that discriminate against clients based on race, handicap, age, gender, sexual orientation, religion, national origin, economic status, or native language.

f. S.C. Code Regs. 36-25(F)(2): Psycho-educational Specialists shall avoid any action that could violate or diminish the civil or legal rights of clients.

g. S.C. Code Regs. 36-25(J)(3): Psycho-educational Specialists shall respect the differences in age, gender, sexual orientation, and socioeconomic,

11

cultural and ethnic backgrounds and must select and use appropriate assessment or treatment procedures, techniques, and strategies.

h. S.C. Code Regs. 36-26(12): Ensure that supervisees are aware of the current ethical standards related to their professional practice, as approved by the Board, as well as legal standards that regulate their professional practice.

i. S.C. Code Regs. 36-26(13): Engage supervisees in an examination of cultural issues that might affect supervision and/or counseling.

52. Plaintiff was terminated by Defendant after she provided responses to how she would handle a counseling patient in a way that abides by the standards above. Defendant instructed Plaintiff that she should tell counseling patients "a sin is a sin" even though this would violate the regulations above.

53. Additionally, with regard to All Supervisors, S.C. regulations provide:

a. S.C. Code Regs. 36-26(12): "Ensure that supervisees are aware of the current ethical standards related to their professional practice, as approved by the Board, as well as legal standards that regulate their professional practice."

b. S.C. Code Regs. 36-26(13): "Engage supervisees in an examination of cultural issues that might affect supervision and/or counseling."

54. Defendant employed Plaintiff in part to provide supervision hours to students which qualify for the supervision hours necessary for students to obtain licenses to practice after graduation. Plaintiff provided supervision in accordance with the regulations above.

55. Defendant terminated Plaintiff for refusing to provide supervision that violated the regulations above.

56. Defendant pretextually terminated Plaintiff based on her refusal to violate South Carolina codes, regulations, and ethics requirements in violation of clear mandates of South Carolina public policy.

57. As a direct and proximate cause of the violation of the Plaintiff's rights as set forth herein, the Plaintiff lost her position with Defendant and her earning capacity has been impaired. Such damages are in addition to her economic losses, including back pay, front pay, and benefits, as well as loss of retirement benefits and other benefits associated with employment.

58. Furthermore, the Plaintiff has sustained reputational loss, loss of goodwill, mental and emotional suffering, and pain and suffering, which will continue into the future. Plaintiff is also entitled to pre and post-judgment interest, appropriate equitable relief, and attorney's fees and costs.

## FOR A THIRD CAUSE OF ACTION
**(Negligent Misrepresentation)**

59. Plaintiff realleges the foregoing where consistent.

60. Defendant made a material representation to Plaintiff that Defendant was working to establish a license eligible program that met the CACREP standard, that Defendant's MACC is a professional degree that prepares students to be licensed counselors, and that the practicum and fieldwork requirements for the MACC degree are designed to meet the requirements of the South Carolina State Board of Professional Counseling.

61. Defendants gained a pecuniary reward as a result of that representation, namely that Plaintiff accepted employment with the university, recruited students to the MACC program, and allowed students to obtain supervision hours at her private business.

62. Defendant knew or should have known that a counseling program that instructs counselors to provide treatment based on the religion of the counselor, not the patient, and providing discriminatory counseling on the basis of sexual orientation and gender is a violation of the material representations made above.

63. A reasonable person under the circumstances would have acted differently than Defendant and would have warned Plaintiff that the program they were working to establish did not abide by CACREP standards or the ACA code of ethics.

64. Defendant recklessly and willfully breached its duty to the Plaintiff to act reasonably in transacting with the Plaintiff.

65. Plaintiff relied on the Defendants' negligent misrepresentation and suffered damages as a result of the same.

66. Those damages were directly and proximately caused by the Defendants' negligence and resulted in the loss of profits, earnings, legal expenses, pain and suffering, and diminished earning capacity. Plaintiff is also entitled to punitive damages and pre-judgment interest.

### FOR A FOURTH CAUSE OF ACTION
**(Defamation)**

67. Plaintiff realleges the foregoing where consistent.

68. Defendant required Plaintiff to go through a reapplication process after already being employed by requiring Plaintiff to go before the seminary board to be interviewed for a position she already held.

69. Defendant terminated Plaintiff's employment for pretextual grounds.

70. Defendant published directly and through insinuation that Plaintiff should not have been hired for her position to begin with, that Plaintiff had done something improper to cause her hiring to be reconsidered, and that Plaintiff was not qualified for the position of Research Professor.

71. Such publications were false, and Defendant knew or should have known of their falsity in the light of the allegations discussed here and above.

72. Such insinuations are defamatory per se as they accuse plaintiff of being unfit in her profession.

73. Defendant's behavior may be considered intentional, reckless, and/or malicious, and Plaintiff is entitled to punitive damages for the same.

74. Plaintiff has suffered damages because of the defamation described here that he is entitled to recover from Defendant. These damages include lost good will, diminished reputation, diminished earning capacity, shock and humiliation, embarrassment, and pain and suffering.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant as follows:

    a. An award of monetary damages in an amount to be determined at trial.

    b. An award of exemplary damages.

    c. An award of punitive damages.

    d. An award of attorneys' fees.

    e. An award of Plaintiff's costs and expenses of this suit.

ELECTRONICALLY FILED - 2022 Dec 27 10:02 PM - ABBEVILLE - COMMON PLEAS - CASE#2022CP0100369

ELECTRONICALLY FILED - 2022 Dec 27 10:02 PM - ABBEVILLE - COMMON PLEAS - CASE#2022CP0100369

    f. A trial by jury.

    g. Any other relief that the Court deems just and proper.

                      **Burnette, Shutt & McDaniel, P.A.**

                      s/ Samantha Albrecht
                      Samantha Albrecht (Bar #102642)
                      912 Lady Street
                      P.O. Box 1929
                      Columbia, South Carolina 29202
                      Office: (803) 850-0912
                      Direct: (803) 904-7933
                      Facsimile: (803) 904-7910
                      salbrecht@burnetteshutt.law

                      **ATTORNEY FOR PLAINTIFF**